1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                           ----oo0oo----

11

12   MARCUS SHOALS, SR., an          NO.  2:18-cv-2355 WBS EFB
     individual,
13
                Plaintiff,
14                                    MEMORANDUM AND ORDER
          v.
15
     OWENS & MINOR DISTRIBUTION,
16   INC., a corporation;
     STAFFMARK HOLDINGS, INC., a
17   corporation; STAFFMARK
     INVESTMENT, LLC, a limited
18   liability company; JOHN
     CLINE, an individual; and
19   DOES 1 through 50, inclusive,

20                Defendant.

21

22                           ----oo0oo----

23          Plaintiff Marcus Shoals, Sr. brought this action

24   against defendants Owens & Minor Distribution, Inc. ("Owens &

25   Minor"), Staffmark Holdings, Inc. ("Staffmark Holdings"),

26   Staffmark Investment, LLC ("Staffmark Investment"), John Cline,

27   and Does 1 through 50, alleging violations of federal and

28   California state law arising from plaintiff's use of Staffmark

                                  1

Investment's staffing services and subsequent employment with Owens & Minor. Defendants now move to compel arbitration and to stay proceedings pending arbitration. (Docket No. 12.) Plaintiff moves to remand this case back to state court. (Docket No. 16.)[1]

I.   Factual and Procedural Background

Plaintiff Marcus Shoals, Sr., an African-American male, interviewed with defendant Owens & Minor for a permanent driving position in January 2014. (First Am. Compl. ("FAC") ¶ 15 (Docket No. 1).) After the interview, Owens & Minor directed plaintiff to seek employment with it through a staffing agency. (Id.) Plaintiff then applied to work for Owens & Minor through Staffmark Investment. (Id. ¶ 16.) Plaintiff received a contingent job offer from Staffmark Investment on the condition that plaintiff complete necessary paperwork as part of an electronic onboarding process. (Decl. of Suzanne Perry ("Perry Decl.") ¶ 12 (Docket No. 12-2).) As part of the onboarding process, plaintiff initialed an arbitration agreement.[2] (Decl.

_____

[1]    Because plaintiff does not oppose defendants' Request for Judicial Notice (Docket No. 13) and the court finds the material in the Request to be properly subject to judicial notice, the court hereby GRANTS the Request.

The court will not render a decision on defendants' Objections to plaintiff's declarations (Docket Nos. 26 & 27), as the statements defendants object to do not bear on the conclusions in this order. See Mayes v. Kaiser Found. Hosps., No. 2:12-CV-1726 KJM EFB, 2014 WL 2506195, at *2 (E.D. Cal. June 3, 2014) ("[T]he court will resolve [] objections only to the extent it finds the disputed evidence has any bearing on the issues before it." (citation omitted)).

[2]    The relevant parties to the arbitration agreement include Staffmark Investment, Staffmark Holdings, and plaintiff. (See Exhibit D, CA Standard Arbitration Agreement ("Arbitration

2

of Emily Giltner ¶¶ 30—32 (Docket No. 12-3); Perry Decl. ¶¶ 18, 19, 27—31.) An account manager at Staffmark Investment verified that plaintiff completed and/or signed all paperwork in his job offer packet, including the arbitration agreement. (Decl. of Janeth Contreras ("Contreras Decl.") ¶¶ 13-15 (Docket No. 12-4).)

Following completion and review of these onboarding documents, Staffmark Investment hired plaintiff effective January 17, 2014. (Perry Decl. ¶ 12.) Soon thereafter, Staffmark Investment placed plaintiff on a temporary work assignment at Owens & Minor as a commercial truck driver. (Contreras Decl. ¶ 26.) Plaintiff alleges that during his employment, his supervisor, John Cline, consistently subjected him to unwelcome comments and conduct based on his race. (FAC ¶ 18.) Plaintiff further alleges that Owens & Minor and Staffmark Investment refused to do anything about his complaints about racist remarks and inappropriate conduct in the workplace. (FAC ¶¶ 19—22.) Plaintiff also claims that Owens & Minor retaliated against him by subjecting him to continued discrimination and harassment, eventually resulting in his constructive termination as of October 12, 2014. (FAC ¶¶ 22—24.) Plaintiff contends that Staffmark Investment subsequently retaliated against him by failing to give him work with other companies. (FAC ¶ 25.)

On May 29, 2018, plaintiff filed his first complaint in San Joaquin Superior Court against defendants Owens & Minor, Staffmark Holdings, Recruit Holdings Co., Ltd, and John Cline,

Agreement") (Docket No. 12-2).) The arbitration agreement also incorporates the JAMS Employment Arbitration Rules ("JAMS Rule(s)") by reference. (Id.)

alleging the following causes of action: (1) unlawful

harassment/hostile environment in violation of California

Government Code § 12940(j); (2) discrimination in violation of

the Fair Employment and Housing Act; (3) retaliation for opposing

discrimination in violation of California Government Code §

12940(h); (4) failure to prevent discrimination and harassment in

violation of California Government Code § 12940(k); (5) wrongful

constructive termination; and (6) intentional infliction of

emotional distress.  (Docket No. 1.)  Plaintiff amended his

complaint on June 6, 2018, adding claims for unlawful

harassment/hostile environment, discrimination, and retaliation

all under Title VII of the Civil Rights Act of 1964.[3]  (Docket

Nos. 1 & 13.)

        Defendants removed this action to this court on August

29, 2018.  Plaintiff moves to remand this action back to state

court, while defendants seek to compel arbitration and stay

proceedings.

II.  Motion to Remand

        "[A]ny civil action brought in a State court of which

the district courts of the United States have original

jurisdiction, may be removed by the defendant or the defendants,

to the district court of the United States for the district . . .

where such action is pending."  28 U.S.C. § 1441(a).  However, if

"it appears that the district court lacks subject matter

jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

---

        [3]   Plaintiff did not reallege his claims for wrongful
constructive termination and intentional infliction of emotional
distress.  Plaintiff also removed defendant Recruits Holdings
Co., Ltd and added defendant Staffmark Investment.

4

On a motion to remand, the defendant bears the burden of showing by a preponderance of the evidence that federal jurisdiction is appropriate. Geographic Expeditions, Inc. v. Estate of Lhotka, 599 F.3d 1102, 1107 (9th Cir. 2010) (internal citation omitted).

Federal courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case "arises under" federal law when federal law creates the cause of action. Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986). Plaintiff's complaint satisfies the requirements for federal question jurisdiction because plaintiff alleges multiple causes of action under Title VII. See Arbaugh v. Y&H Corp., 546 U.S. 500, 505 (2006) ("Title VII surely is a 'la[w] of the United States.'"). This court has supplemental jurisdiction over plaintiff's pendent state law claims because those claims arise out of the same "common nucleus of operative facts" as plaintiff's federal law claims. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966). Plaintiff's state and federal law claims all stem from the same period of employment with Staffmark Investment and Owens & Minor.

Plaintiff's only argument in favor of remand is that defendants should be estopped from removing this case to federal court because they seek to enforce an arbitration agreement. Plaintiff contends that the arbitration agreement acts as a de facto forum-selection clause that operates as a waiver of defendant's right to remove to federal court.

Remand may be appropriate where a forum selection clause clearly and unequivocally waives a party's right of

removal.  See <u>Ferrari, Alvarez, Olsen & Ottoboni v. Home Ins.</u>
<u>Co.</u>, 940 F.2d 550, 554 (9th Cir. 1991).  However, plaintiff
cannot point to any clear or unequivocal language within any
contract between these parties that operates as such a waiver.
While the arbitration provision requires JAMS arbitration, it
does not follow that defendants waived any statutory right to
proceed in federal court if this court decides that the
arbitration agreement is unenforceable.  Absent any provision
specifying that state courts have exclusive jurisdiction outside
of arbitration, defendants retain their right of removal.

Accordingly, plaintiff's motion to remand this action
to the San Joaquin Superior Court will be denied.

III. <u>Motion to Compel Arbitration and Stay Proceedings</u>

A.    <u>Legal Standard</u>

The Federal Arbitration Act ("FAA") provides that a
written provision in a "contract evidencing a transaction
involving commerce to settle by arbitration a controversy
thereafter arising out of such contract . . . shall be valid,
irrevocable, and enforceable, save upon such grounds as exist at
law or in equity for the revocation of any contract."  9 U.S.C. §
2.  It permits a "party aggrieved by the alleged failure,
neglect, or refusal of another to arbitrate under a written
agreement for arbitration [to] petition any United States
district court . . . for an order directing that . . .
arbitration proceed in the manner provided for in [the]
agreement."  <u>Id.</u> § 4.

"The FAA 'mandates that district courts <u>shall</u> direct
the parties to proceed to arbitration on issues as to which an

arbitration agreement has been signed.'" Kilgore v. KeyBank, Nat'l Ass'n, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)). "The basic role for courts under the FAA is to determine '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" Id. (quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." Tompkins v. 23andMe, Inc., 840 F.3d 1016, 1022 (9th Cir. 2016).

B. Validity of the Arbitration Agreement

Plaintiff argues that the arbitration agreement is invalid because the arbitration provision in his employment contract is both procedurally and substantively unconscionable.

1. Unconscionability

The savings clause of the FAA permits arbitration agreements to be invalidated by generally applicable state law contract defenses, such as unconscionability. Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1259 (9th Cir. 2017) (citing AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)). Those doctrines cannot be "applied in a fashion that disfavors arbitration." Concepcion, 563 U.S. at 341. Unconscionability under California law remains a valid defense to a petition to compel arbitration because it applies equally to arbitration and nonarbitration agreements. See Poublon, 846 F.3d at 1260.

Under California law, "the party opposing arbitration bears the burden of proving any defense such as

unconscionability."  Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC, 55 Cal. 4th 223, 236 (2012).  The party must demonstrate that the contract or a specific clause in the contract is both procedurally and substantively unconscionable. Sanchez v. Valencia Holding Co., 61 Cal. 4th 899, 910 (2015). Procedural and substantive unconscionability do not have to be present to the same degree.  Id.  Instead, there is a sliding scale where "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000).

## a. Procedural Unconscionability

Procedural unconscionability focuses on "oppression or surprise due to unequal bargaining power."  Pinnacle, 55 Cal. 4th at 246.  Oppression results from inequality in bargaining power that deprives a party of real negotiation and meaningful choice. Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc., 232 Cal. App. 4th 1332, 1347-48 (5th Dist. 2015), as modified on denial of reh'g (Feb. 9, 2015).  Oppression can be shown by either establishing that the contract is one of adhesion or by pointing to the circumstances surrounding the negotiation and formation of the contract.  Id.

Plaintiff presents two arguments for why the contract is procedurally unconscionable.  First, he argues that the arbitration agreement is a contract of adhesion.  Second, plaintiff contends that Staffmark Investment failed to provide him with a copy of the applicable arbitration rules.

i. Contract of Adhesion

Analysis of unconscionability begins with an inquiry into "whether the arbitration agreement is adhesive." Armendariz, 24 Cal. 4th at 113. A contract of adhesion is "a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." Flores v. Transam. HomeFirst, Inc., 93 Cal. App. 4th 846, 853 (1st Dist. 2001). A contract of adhesion is imposed and drafted by the party of superior bargaining strength. Armendariz, 24 Cal. 4th at 113. "The adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability." Sanchez, 61 Cal. 4th at 915.

Defendants concede that plaintiff was required to sign an arbitration agreement as a condition of employment with Staffmark Investment and that Staffmark Investment had greater bargaining power. (See Defs.' Opp'n to Pl.'s Mot. to Remand at 8–10, 18–22). Nevertheless, defendants argue that such a take-it-or-leave-it arbitration agreement remains valid and enforceable under California law.

"The California Supreme Court has not adopted a rule that an adhesion contract is per se unconscionable." Poublon, 846 F.3d at 1261 (citing Sanchez, 61 Cal. 4th at 914–15; Morris v. Redwood Empire Bancorp, 128 Cal. App. 4th 1305, 1320 (4th Dist. 2005)). In the employment context, absent any other indication of oppression or surprise, an arbitration provision of a contract of adhesion "'will be enforceable unless the degree of substantive unconscionability is high.'" Id. (quoting Serpa v. California Sur. Investigations, Inc., 215 Cal. App. 4th 695, 704

(2d Dist. 2013)).  Therefore, it is insufficient that plaintiff was offered the arbitration agreement on a take-it-or-leave-it basis as he must show additional indicia of unconscionability for the agreement to be unenforceable.

Nevertheless, the fact that Staffmark Investment had "overwhelming bargaining power, drafted the contract, and presented it to [plaintiff] on a take-it-or-leave-it basis" is sufficient for this court "to examine the extent of substantive unconscionability." Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1284 (9th Cir. 2006) (en banc).

## ii. Failure to Attach Arbitration Rules

The failure to provide a copy of the relevant arbitration rules does not give rise to a greater degree of procedural unconscionability. Poublon, 846 F.3d at 1262 (citing Baltazar v. Forever 21, Inc., 62 Cal. 4th 1237, 1246 (2016)). Instead, courts more closely scrutinize the substantive unconscionability of terms, in this case the arbitration rules, that were 'artfully hidden' by incorporating them by reference. Id. (citing Baltazar, 62 Cal. 4th at 1246).  It is immaterial to the analysis of procedural unconscionability that plaintiff was not provided with and cannot find the JAMS rules, as parties are generally allowed to incorporate by reference into their contract the terms of another document.  Id. (citations omitted).  The JAMS rules are freely available online, so the only requirement is that those incorporated rules not be substantively unfair.

Accordingly, the failure to attach the rules governing arbitration does not render the agreement procedurally unconscionable.

b. Substantive Unconscionability

     For an arbitration agreement to be substantively unconscionable, California courts have held that the agreement must be "overly harsh," "unduly oppressive," "unreasonably favorable," or "must shock the conscience." Id. at 1261 (internal quotation marks and citations omitted). The "central idea" is that the "the unconscionability doctrine is concerned not with a simple old-fashioned bad bargain but with terms that are unreasonably favorable to the more powerful party." Baltazar, 62 Cal. 4th at 1244. "Not all one-sided contract provisions are unconscionable." Sanchez, 61 Cal. 4th at 911.

     Plaintiff argues that the arbitration agreement is substantively unconscionable because (1) it fails to provide for adequate discovery, (2) defendants and their counsel would have an inequitable advantage in arbitration as "repeat players," and (3) it contains an illegal waiver of representative claims brought under the Private Attorney General Act ("PAGA").

i. Limitations on Discovery

     California law requires that an arbitration agreement provide for discovery that is adequate to litigate the claim(s) at issue. See Armendariz, 24 Cal. 4th at 106. Discovery as broad as that provided in court is not required, so long as minimum standards of fairness apply such that employees can vindicate their public rights. Baxter v. Genworth N. Am. Corp., 16 Cal. App. 5th 713, 727 (1st Dist. 2017).

     The JAMS rules, which are incorporated by reference, require each party to cooperate in good faith in the voluntary exchange of non-privileged documents and other information. JAMS

Rule 17(a) (Exhibit S (Docket No. 12-5)). JAMS Rule 17(b) entitles each party to take _at least_ one deposition of an opposing party or individual under the opposing party's control. Absent an agreement otherwise, the arbitrator determines the necessity of additional depositions based upon the need for the requested information, the availability of other discovery options, and the burdensomeness of the request. _Id._

Plaintiff argues that these rules do not allow for sufficient discovery because the form, amount, and frequency of discovery is left solely to the arbitrator's discretion. Plaintiff further argues that the fact that each party is limited to one deposition as of right benefits the employer because they typically only take one deposition -- that of the plaintiff employee. On the other hand, the plaintiff employee would need to take several depositions of multiple people involved in the allegedly illegal conduct.[4]

Plaintiff relies on the Fourth District of the California Courts of Appeal's decision in Fitz v. NCR Corp., 118 Cal. App 4th 702 (4th Dist. 2004) to argue that these discovery

---

[4] Plaintiff's counsel also contends that she recently experienced the prejudicial effect of an arbitrator's discovery discretion first hand when she witnessed the arbitrator deny all interrogatories and requests to depose employee witnesses on the defendant's witness list. (Decl. of Audrey Priolo ¶ 4 (Docket No. 16-3).) The court notes that counsel's experience was with a different set of arbitration rules, those of American Arbitration Association ("AAA"), and a different pool of potential arbitrators. Regardless, California state courts approve of the AAA's discovery rules. See Roman v. Superior Court, 172 Cal. App. 4th 1462, 1476 (2d Dist. 2009) ("There appears to be no meaningful difference between the scope of discovery approved in Armendariz and that authorized by the AAA employment dispute rules, certainly not the role of the arbitrator in controlling the extent of actual discovery permitted.").

provisions are inadequate.  That court drew on the unique characteristics of employment disputes to hold unconscionable discovery provisions that guaranteed only two depositions and no written discovery, with additional discovery permitted only if the requesting party could demonstrate <u>compelling</u> need.  <u>Id.</u> at 717—18.  The court found that the only way an employee could gain access to the necessary information to prove his or her claim was to get permission for additional discovery under a standard that granted it only where a fair hearing would otherwise be <u>impossible</u>.  <u>Id.</u>

The provisions at issue in this case are readily distinguishable from those in <u>Fitz</u>.  Most courts have found that the JAMS rules provide for adequate discovery.  <u>Sanchez v. Homebridge Fin. Servs., Inc.</u>, No. 1:17-CV-1267 AWI EPG, 2018 WL 1392892, at *5 (E.D. Cal. Mar. 20, 2018) (citing relevant cases).  Even though these rules limit discovery as of right to only one deposition, the arbitrator has discretion, under the forgiving standard of "reasonable need" and a balancing of interests, to authorize additional discovery.  This standard is not nearly as demanding as the one at issue in <u>Fitz</u>.  <u>Dotson v. Amgen, Inc.</u>, 181 Cal. App. 4th 975, 982—83 (2d Dist. 2010) (finding the same); <u>see also</u> <u>Sanchez v. Carmax Auto Superstores California, LLC</u>, 224 Cal. App. 4th 398, 404 (2d Dist. 2014) (holding that it was not substantively unconscionable for an arbitrator to grant additional discovery only where it was not unduly burdensome and would not unduly delay the conclusion of arbitration).  Courts "assume that the arbitrator will operate in a reasonable manner in conformity with the law."  <u>Dotson</u>, 181 Cal. App. 4th at 984—

1   85.

2          Moreover, the arbitration agreement supplements the

3   JAMS rules by further liberalizing discovery.  The agreement

4   grants discovery by allowing for reasonable access to documents

5   and witnesses so long as it is necessary to "discovery adequate

6   to investigate the Employment Claim(s)."  (Arbitration Agreement

7   § 3.6.)  See also Poublon, 846 F.3d at 1269 (highlighting

8   approvingly a provision that allowed for additional discovery if

9   it was "sufficient to adequately arbitrate").  Plaintiff has not

10  argued why he would be unable to vindicate his rights in this

11  lawsuit under the JAMS rules as supplemented by the arbitration

12  agreement.

13         Accordingly, any limitations on discovery do not render

14  the arbitration agreement substantively unconscionable.

15                    ii.  "Repeat Player" Effect

16         An arbitration provision is substantively

17  unconscionable if it fails to provide for a neutral arbitrator.

18  Armendariz, 24 Cal. 4th at 103.  State courts have expressed

19  concerns that that the "repeat player" effect may render some

20  arbitration arrangements biased in favor of large entities that

21  frequently appear in arbitration.  See id. at 115; Mercuro v.

22  Superior Court, 96 Cal. App. 4th 167, 178 (2d Dist. 2002).

23  Plaintiffs cannot raise the "repeat player effect," however,

24  without producing particularized evidence that would support an

25  unconscionability finding.  Nagrampa, 469 F.3d at 1285.  The

26  repeat player effect does not render an arbitration agreement

27  unconscionable per se.  Mercuro, 96 Cal. App. 4th at 178.

28         Here, plaintiff has not put forward any specific

evidence showing that a JAMS arbitrator is likely to be partial.
Plaintiff merely argues that the "prospect of repeat business"
could tempt the arbitrators to decide the matter in defendants'
favor.  Courts cannot presume, however, that arbitrators "are
ill-equipped to disregard such institutional incentives and rule
fairly and equitably," because "the FAA requires that we treat
arbitration as a coequal forum for dispute resolution."
Sandquist v. Lebo Auto., Inc., 1 Cal. 5th 233, 259 (2016)
(citations omitted).  The assertion that business incentives bias
JAMS arbitrators to repeat player defendants is inconsistent with
this understanding of the FAA.

Furthermore, JAMS Rule 15 contains sufficient
procedures to ensure that a neutral arbitrator is selected.  If
the parties cannot agree on an arbitrator, JAMS will provide a
list of candidates from which each party may strike two or three
and rank the remaining candidates in order of preference.  JAMS
Rules 15(b) & (c).  The parties also may challenge any particular
arbitrator for cause.  JAMS Rule 15(i); see also McManus v. CIBC
World Mkts. Corp., 109 Cal. App. 4th 76, 94-95 (2d Dist. 2003)
(holding that an arbitration provision was not unconscionable
because the rules allowed each party one peremptory challenge and
an unlimited number of challenges for cause).  Finally, the
arbitrators and parties have a duty to disclose any circumstances
that could give rise to doubt of the arbitrator's impartiality or
independence.  JAMS Rule 15(h).  Given these procedural
protections, it is unlikely that a JAMS arbitrator would be
biased towards any party.

Accordingly, the arbitration agreement is not

15

substantively unconscionable for the failure to provide for a
neutral arbitrator.

### iii. PAGA Waiver

The California Supreme Court has held that where "an
employment agreement compels the waiver of representative claims
under the PAGA, it is contrary to public policy and unenforceable
as a matter of state law." Iskanian v. CLS Transp. L.A., LLC, 59
Cal. 4th 348, 384 (2014). Plaintiff contends that Section 2.4 of
the arbitration agreement waives all representative claims,
including those under the PAGA. It is noteworthy, however, that
plaintiff has not alleged any PAGA claim in this case.
Accordingly, even if the agreement were read to compel waiver of
PAGA claims, it would have no effect on this case. See Limon v.
ABM Indus. Groups, LLC, No. 3:18-CV-00701, 2018 WL 3629369, at *6
n.3 (S.D. Cal. July 31, 2018) (refusing to examine the
substantive unconscionability of a PAGA waiver where plaintiff
did not allege a PAGA claim.). Nevertheless, for the reasons
discussed below the court does not read Section 2.4 to compel
arbitration of PAGA claims. That provision does not mention the
PAGA and only waives representative claims "[t]o the fullest
extent permitted by law." (Arbitration Agreement § 2.4.)

To the extent that Section 2.4 waives plaintiff's right
to bring PAGA claims, the Ninth Circuit has held that such a
waiver does not necessarily weigh in favor of a finding of
substantive unconscionability, because state court rules to the
contrary may be inconsistent with the purposes of the FAA.
Poublon, 846 F.3d at at 1264 (citing Concepcion, 563 U.S. at
344); see also Sonic-Calabasas A, Inc. v. Moreno, 51 Cal.4th 659,

16

686-87, judgment vacated on other grounds, 565 U.S. 973 (2011)

("Contracts can be contrary to public policy but not

unconscionable and vice versa." (internal citations omitted)).

Even if the provision does weigh in favor of a finding

of substantive unconscionability, the court will construe the

waiver of representative claims to be limited to non-PAGA claims.

See Cal. Civ. Code § 1670.5(a) ("If the court as a matter of law

finds the contract or any clause of the contract to have been

unconscionable at the time it was made the court . . . may so

limit the application of any unconscionable clause as to avoid

any unconscionable result."). Consequently, if plaintiff alleged

any PAGA claims, this court could allow those claims to proceed.

Such an interpretation of the waiver would not result

in a refusal to enforce the entire agreement because the court

can only do so if plaintiff shows that the agreement is

"'permeated' by unconscionability." Armendariz, 24 Cal. 4th at

122 (citing Cal. Civ. Code § 1670.5, Legis. Comm. Comments n.2).

Plaintiff has not satisfied this showing because "[t]his clause

can be limited without affecting the remainder of the agreement."

Poublon, 846 F.3d at 1273 (citing Iskanian, 59 Cal. 4th at 391).

Section 4.3 of the arbitration agreement states that any finding

that a provision of the agreement is unenforceable shall not

affect the enforceability of the remaining parts of the

agreement. This provision "makes clear that the parties intended

for any invalid portion of the agreement to be restricted." Id.

at 1274.

Accordingly, any PAGA waiver would not render the whole

agreement substantively unconscionable.

C.   Applicability of the Arbitration Agreement

Plaintiff does not argue that, if the arbitration agreement is valid, it would not apply to any of his claims against Staffmark Investment or Staffmark Holdings.  Instead, plaintiff argues that the arbitration agreement is not applicable to his claims against defendants Owens & Minor and Cline because they are non-signatories to the arbitration agreement.

1. Application to Non-Signatories

Non-signatories to an arbitration agreement may compel arbitration if relevant state contract law allows the litigant to enforce the agreement.  Kramer v. Toyota Motor Corp., 705 F.3d 1122, 1128 (9th Cir. 2013) (citing Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 632 (2009)).  Therefore, California contract law determines whether Owens & Minor and Cline, as non-signatories, are entitled to arbitration.  See id.

The non-signatory defendants rely on theories of equitable estoppel, agency, and third-party beneficiary to argue that they can enforce the arbitration agreement against plaintiff.

a. Equitable Estoppel

Where a non-signatory seeks to enforce an arbitration provision, equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the non-signatory or the claims are intimately founded in and intertwined with the underlying contract; and (2) when the signatory alleges substantially interdependent and concerted misconduct by the non-signatory and a signatory, and the allegations of interdependent misconduct are

intimately connected with the obligations of the underlying agreement.  Id. at 1128—29 (citing Goldman v. KPMG, LLP, 173 Cal. App. 4th 209, 219—21 (2d Dist. 2009)).  "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes."  Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006) (internal quotation marks and citations omitted).

The first circumstance is inapplicable because plaintiff's claims are not intimately founded in or intertwined with the contract he signed with Staffmark Investment. Plaintiff's claims rely on statutory anti-discrimination law which is separate from the contract itself.  See In re Henson, 869 F.3d 1052, 1060 (9th Cir. 2017) ("Equitable estoppel is inapplicable where a plaintiff's allegations reveal no claim of any violation of any duty, obligation, term or condition imposed by the [agreement containing the arbitration clause]." (internal quotation marks and citations omitted)).  The resolution of plaintiff's claims against the non-signatories does not require any examination of the provisions of the arbitration agreement. See Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042, 1047 (9th Cir. 2009).

Defendants rely on what appears to be an outlier decision by the Fourth District of the California Courts of Appeal in Garcia v. Pexco, LLC, 11 Cal. App. 5th 782 (4th Dist. 2017) for the proposition that statutory claims can arise out of a contract and support a theory of equitable estoppel.  Id. at 786—87.  The Garcia court held that a non-signatory defendant could enforce an arbitration agreement an employee signed with a

staffing agency.  Id.  In that case, the court noted that all the
employee's claims against the non-signatory employer were rooted
in his employment relationship with the staffing agency, so the
non-signatory defendant could invoke the arbitration provision
from the plaintiff's contract with the staffing agency.  Id. at
787—88.

Defendants' reliance on Garcia is misplaced.  That
court's interpretation of the 'intimately intertwined with the
contract' prong appears to be contrary to established law and has
not been adopted by the California Supreme Court.  See In re
Henson, 869 F.3d at 1061 (holding that equitable estoppel does
not apply where a plaintiff's allegations do not rely on the
contract containing the arbitration provision or attempt to seek
any benefit from its terms); accord Johnson v. Barlow, Civ. No.
06-1150 WBS GG, 2007 WL 1723617, at *3 (E.D. Cal. June 11, 2007)
(noting that when the Ninth Circuit has predicted how the
California Supreme Court would rule on an issue, and "barring a
clear holding to the contrary by California's highest court, it
is not this court's prerogative to second guess that conclusion,"
notwithstanding a conflicting California Court of Appeal
decision) (citing Dimidowich v. Bell & Howell, 803 F.2d 1473,
1482 (9th Cir. 1986)).

Moreover, this understanding of equitable estoppel is
inconsistent with the purpose of the doctrine.  Plaintiff has not
availed himself of any benefits of his contract with Staffmark
Investment by filing this suit against the non-signatories, so he
is not evading any burdens the agreement might otherwise impose.
See Comer, 436 F.3d at 1101; see also Kramer, 705 F.3d at 1133

20

("The 'linchpin' for equitable estoppel is fairness."). Gesturing to plaintiff's employment relationship with the staffing agency fails to make the analysis specific to plaintiff's benefits or burdens under the relevant contract.

Defendants also argue that they have satisfied the 'interdependent misconduct' prong of equitable estoppel, because plaintiff supposedly fails to distinguish between defendants in his allegations. Defendants again rely on Garcia where the employee's allegations did not distinguish between the signatory and non-signatory defendant in any way. 11 Cal. App. 5th at 787.

Unlike in Garcia, however, plaintiff relies on different facts for different defendants. For example, plaintiff alleges that Cline, his supervisor, repeatedly subjected him to "inappropriate and unwelcome comments and conduct based on his race." (FAC ¶ 18.) Against Owens & Minor, plaintiff contends that it discriminated and retaliated against him by refusing to hire him based on his race and by failing to investigate his complaints of racial discrimination. (FAC ¶¶ 16—24.) Finally, plaintiff alleges that Staffmark Investment discriminated and retaliated against him by failing to give him other work after he refused to work at Owens & Minor. (FAC ¶ 25). Even though plaintiff alleges the same causes of action against Owens & Minor as he does against Staffmark Investment, plaintiff has a distinct factual basis for each claim as to each defendant. Moreover, any allegations of collusion between these parties are not "inextricably bound up with the obligations imposed by the agreement containing the arbitration clause." Kramer, 705 F.3d at 1133 (citing Goldman, 173 Cal. App. 4th at 219).

Accordingly, equitable estoppel does not apply and plaintiff does not have to arbitrate his claims with defendants Owens & Minor and Cline under this theory.

### b. Agency

Agency is a fiduciary relationship between a principal and an agent. Am. Airlines, Inc. v. Mawhinney, No. 16-56638, 2018 WL 4609254, at *8, --- F.3d ---- (9th Cir. Sept. 26, 2018) (citations omitted). "To establish an agency relationship, '[t]he principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and subject to his control.'" Id. (quoting Edwards v. Freeman, 34 Cal. 2d 589, 592 (1949); Secci v. United Indep. Taxi Drivers, Inc., 8 Cal. App. 5th 846, 855 (2d Dist. 2017)).

Nothing in defendants' moving papers suggests that Owens & Minor and Cline agreed to act as Staffmark Investment's agent or vice versa for the purposes of the alleged misconduct. Instead, defendants' agency theory relies on plaintiff's supposed failure in distinguishing between defendants in his complaint. The court already addressed this argument, which is more appropriately classified as a theory of equitable estoppel. Nevertheless, plaintiff's complaint does not support an agency theory.[5] Even though plaintiff claims that Staffmark Investment

---

[5] Defendants argue that plaintiff's complaint properly alleges an agency relationship as to all defendants. (See FAC ¶ 9.) However, complaints in actions against multiple defendants commonly include conclusory allegations that the defendants were each other's agents. Barsegian v. Kessler & Kessler, 215 Cal. App. 4th 446, 451 (2d Dist. 2013). "If [defendants] were correct that such allegations were sufficient to establish an agency relationship for the purpose of compelling arbitration, 'in every multi-defendant case in which the complaint contained such

retaliated against him because he refused to return to work at Owens & Minor, plaintiff does not allege that the retaliation occurred because Owens & Minor directed Staffmark Investment to act in such a way.

Accordingly, Owens & Minor and Cline are not entitled to enforce the arbitration provision against plaintiff under any agency theory.

### c. Third-Party Beneficiary

In California, arbitration agreements may be enforced by non-signatories where the non-signatory is a third-party beneficiary of the agreement. Nguyen v. Tran, 157 Cal. App. 4th 1032, 1036 (4th Dist. 2007). The non-signatory bears the burden of proving that it is a third-party beneficiary. Murphy v. DirecTV, Inc., 724 F.3d 1218, 1233 (9th Cir. 2013). A third party may only assert rights under a contract if the parties to the agreement intended the contract to benefit the third party. Id. (citing Hess v. Ford Motor Co., 27 Cal. 4th 516, 524 (2002)). "Intent is to be inferred, if possible, solely from the language of the written contract." The H.N. & Frances C. Berger Found. v. Perez, 218 Cal. App. 4th 37, 44 (4th Dist. 2013) (internal quotation marks and citations omitted).

At oral argument, counsel for Owens & Minor and Cline

boilerplate allegations of mutual agency, as long as one defendant had entered into an arbitration agreement with the plaintiff, every defendant would be able to compel arbitration, regardless of how tenuous or nonexistent the connections among the defendants might actually be.'" Mohamed v. Uber Techs., Inc., 848 F.3d 1201, 1214-15 (9th Cir. 2016) (quoting Barsegian, 215 Cal. App. 4th at 451). Accordingly, the allegation of an agency relationship in plaintiff's complaint is not a sufficient ground on which to compel arbitration. Id. at 1215.

argued that the non-signatory defendants are intended beneficiaries of plaintiff's arbitration agreement with Staffmark Investment and Staffmark Holdings. All defendants argue that the arbitration agreement would be meaningless if it did not cover claims against Staffmark Investment's customers like Owens & Minor, because Staffmark Investment almost exclusively sends its employees to work at its customers' facilities. Defendants rely on language in the arbitration agreement providing that it covers "any Employment Claims the Employee may have against the Company's officers, directors, employees, agents or any of the Company's affiliated or related entities."[6] (Arbitration Agreement § 2.2.)

The relevant provision of the arbitration agreement does not specifically list claims against Staffmark Investment's customers. Even though the non-signatory defendants contend that they are "affiliated or related entities," courts often apply the canon of noscitur a sociis, "which counsels that a word is given more precise content by the neighboring words with which it is associated." United States v. Williams, 553 U.S. 285, 294 (2008); see also WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc., 655 F.3d 1039, 1051 n.3 (9th Cir. 2011) (using noscitur a sociis to interpret a provision of a contract governed by California law). Courts rely on this principle "to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words." Gustafson v. Alloyd Co., 513 U.S. 561, 575 (1995). The more specific terms immediately preceding

---

[6] As defined in the arbitration agreement, the Company is Staffmark Holdings and its subsidiaries.

"affiliated or related entities" cover those who act on the Company's behalf. As Staffmark Investment's customers, the non-signatory defendants do not act on the Company's behalf. No party has put forth evidence establishing that the non-signatory defendants took any actions at the behest of the Company.

Moreover, the arbitration agreement reserves the right to initiate arbitration only for the parties to the arbitration agreement. (Arbitration Agreement § 3.2.) There is no indication that Staffmark Investment's customers or other non-signatories may initiate arbitration against any of the signatories to the agreement under this section of the agreement. Given the fact that the Staffmark defendants drafted the arbitration agreement, they could have clearly written this agreement to provide the non-signatories with this benefit. See Murphy, 724 F.3d at 1234 (holding that ambiguities can be construed against the drafting party where the arbitration agreement could have easily been worded more clearly to provide for a third-party beneficiary). If Staffmark Investment almost exclusively sends its employees to work for its customers, it certainly could have foreseen that its employees may have claims against its customers and worded its standard arbitration agreement accordingly.

Accordingly, Owens & Minor and Cline cannot enforce the arbitration provision as third-party beneficiaries.

D.    Relief

This court finds that plaintiff must arbitrate all claims against Staffmark Investment and Staffmark Holdings. While the arbitration agreement may be procedurally

25

unconscionable, it is not so substantively unconscionable as to render the entire agreement unenforceable. See Sanchez, 61 Cal. 4th at 910; Poublon, 846 F.3d at 1274. The agreement is not enforceable, however, as to any of plaintiff's claims against Owens & Minor and Cline.

Consistent with the "preeminent concern of Congress" in wanting to enforce private agreements, this court will enforce the arbitration agreement as to the Staffmark defendants "even if the result is 'piecemeal' litigation."[7] See Dean Witter Reynolds, 470 U.S. at 221. Given this conclusion, 9 U.S.C. § 3 requires this court "to stay litigation of arbitral claims pending arbitration of those claims in accordance with the terms of the agreement." Concepcion, 563 U.S. at 344. Due to concerns of judicial economy and as a matter of this court's discretion in controlling its docket, proceedings will be stayed as to all defendants pending the outcome of plaintiff's arbitration with Staffmark Investment and Staffmark Holdings. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 n.23 (1983) ("In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court (or to the state trial court under applicable state procedural rules) as a matter of its discretion to control its

_____

[7] Although all the parties seem to prefer that the claims against all defendants proceed together, this court cannot legally compel plaintiff to arbitrate his claims with the non-signatory defendants. Nothing in this Order, however, precludes the parties from stipulating to submit plaintiff's claims against Owens & Minor and Cline to arbitration along with his claims against Staffmark Investment and Staffmark Holdings.

docket.").

   IT IS THEREFORE ORDERED that plaintiff's Motion to Remand (Docket No. 16) be, and the same hereby is, DENIED.

   IT IS FURTHER ORDERED that defendants' Motion to Compel Arbitration (Docket No. 12) be, and the same hereby is, GRANTED with respect to plaintiff's claims against defendants Staffmark Investment, LLC and Staffmark Holdings, Inc. and DENIED with respect to plaintiff's claims against defendants Owens & Minor Distribution, Inc. and John Cline.  All proceedings will be STAYED pending the outcome of arbitration.

Dated: October 30, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE